EDWARD AUSTIN JENKINS, MICHAEL JENKINS,
AND JOHN A. KERNAN, TRUSTEES, ET AL, vs.
LEIGH BONSAL, EXECUTOR OF SARAH
BONSAL JENKINS, DECEASED.

*Contingent remainders : transmissible, devisable and assignable ;*
*but not passing to widow of intestate; date of*
*death of life tenant; time for deter-*
*mining remainderman's heirs.*

A testator, Austin Jenkins, after providing for his other chil-
dren, bequeathed to his daughter Isabella Jenkins an equit-
able estate for life, and in another clause provided as fol-
lows : "But in case my said daughter, Isabella Jenkins, shall
depart this life without leaving a child or children," etc.,
"living at the time of her death," etc., "then in trust," etc.,
to be disposed of in manner following: " * * * and one
equal fifth part shall go to, and I do hereby give, devise and
bequeath the same to my son, Thomas Meredith Jenkins,
above named, his heirs, executors, administrators and assigns,
absolutely and forever, etc." T. M. J. died intestate before
the said I. J., leaving a wife, but no descendants; the widow
died before I. J., leaving a will in which L. B. was named
executor; upon the death of I. J., without descendants, a bill
was filed by the trustees and others,—under the will of the
said Austin Jenkins, to determine to whom the share of
T. M. J. in the estate of I. J. should be paid—; upon an
appeal from an order of the Circuit Court of Baltimore City
decreeing that one-half of the estate should be paid over to
L. B., the said executor, it was held that the estate so limited
to T. M. J. was a contingent remainder of the class that is
transferrable, divisable and assignable, because limited to a
certain designated person.                          p. 636

But the remainder though it was descendible did not vest in
the widow of T. M. J.                               p. 636

If the contingent remainder had been real estate, the heirs at law of the intestate T. M. J., who were *in esse* at the time of the death of I. J., would have taken.                    p. 636

And no distinction has been, or is to be, made in this respect, between real and personal property.                    p. 636

And the share to which T. M. J. would have been entitled under this clause of the will, vests in his brothers and sisters, and not in the executor of his widow.                    p. 638

The date of the death of the life tenant, I. J., and not the date of the death of the contingent remainderman, is the point of time at which his heirs are to be ascertained, and only such as were then living are entitled to take.                    p. 636

*Decided November 22nd, 1911.*

Appeal from the Circuit Court of Baltimore City (HEUIS-LER, J.).

The cause was argued before BOYD, C. J., PEARCE, BURKE, PATTISON, URNER and STOCKBRIDGE, JJ.

*Edgar H. Gans* (with whom were *Benzinger* and *Calwell* on the brief), for the appellants.

*Leigh Bonsal,* for the appellees.

BURKE, J., delivered the opinion of the Court.

Austin Jenkins died on the 30th day of November, 1888, having made and executed a last will and testament dated the 26th day of April, 1878, which was duly admitted to probate by the Orphans' Court of Baltimore City on the 4th day of December, 1888. He left surviving him six children, viz: Edward Austin Jenkins, Francis de Sales Jenkins, Thomas Meredith Jenkins, Mary Isabel Jenkins, Harriet A. Kernan, and Mary P. Garland. One of his sons, Thomas Meredith Jenkins, died in May, 1890, intestate, leaving no child or descendants; but leaving a widow who died in 1896,

leaving a last will and testament, which was duly admitted to probate wherein she appointed her brother, Leigh Bonsal, the appellee on this record, her executor, to whom letters testamentary were granted by the Orphans' Court of Baltimore City.

Mary Isabel Jenkins, one of the daughters, died on March 5th, 1911, never having had a child. Two brothers and two sisters, viz: Edward Austin Jenkins and Francis de Sales Jenkins, and Harriet A. Kernan and Mary P. Garland survived her and are now living.

Austin Jenkins by his will devised and bequeathed all the rest and residue of his estate to certain trustees to be divided among his six children in accordance with the terms and directions therein contained. We are concerned in this case with the one-sixth part which was devised and bequeathed to Mary Isabel Jenkins, wife of Michael Jenkins, in which she had an equitable life estate only. This portion consists of securities shown upon a schedule which appears in the record.

The surviving brothers and sisters, whose names we have given, claim that such securities are distributable to them in equal proportions; the appellee, as the executor of Sarah B. Jenkins, the deceased wife of Thomas Meredith Jenkins, claims that she was entitled as the widow of Thomas Meredith Jenkins to one-half of the share to which her husband would have been entitled had he survived his sister, Mrs. Jenkins, the life tenant, he having died without children or descendants. The value of this one-half share to which he claimed to be entitled is $21,860.

By appropriate proceedings had in the Circuit Court of Baltimore City, upon a petition filed by the surviving brothers and sisters of Mrs. Jenkins and by the trustees under the will of Austin Jenkins, that Court decided "that one-fifth part of the trust estate of Mary Isabel Jenkins became vested in right, though not in possession, in her brother, Thomas Meredith Jenkins, in his lifetime (said Thomas Meredith Jenkins being specifically named in the will of his father, Austin Jenkins), and the Court being

satisfied that the one-fifth interest vested in Thomas Meredith Jenkins became absolute by reason of the death, in March, 1911, of his sister, Mary Isabel Jenkins, without leaving issue, and the Court being fully satisfied that Sarah Bonsal Jenkins survived her husband, Thomas Meredith Jenkins, who died intestate without issue in May, 1909. It is thereupon this 16th day of June, 1911, by the Circuit Court for Baltimore City, adjudged, ordered and decreed that Edward Austin Jenkins, Michael Jenkins and John A. Kernan, trustees, transfer and deliver to Leigh Bonsal, executor of Sarah Bonsal Jenkins, one-half of the share of Thomas Meredith Jenkins in the estate of his sister, Mary Isabel Jenkins, the said share being one-fifth interest in said estate; the said one-half of the one-fifth having been set aside by the trustees, as described in the sixth paragraph of the petition, and as described in detail (giving a list of the securities) in a schedule filed with said petition; and the other one-half of the share of Thomas Meredith Jenkins having already been allotted to Edward Austin Jenkins, Francis de Sales Jenkins, Harriet A. Kernan and Mary P. Garland absolutely, and the auditor's account embodying the same having been ratified by this Court." This appeal was taken from that decree.

The conflicting claims of the parties involve a construction of the fourth item of the will of Austin Jenkins. The portion of that item which we are to construe is here transcribed.

Item Fourth. And in trust as to one other sixth part or share of the said rest, residue and remainder of my estate and property as aforesaid, that the same shall be held by the said trustees and the survivors and survivor of them and their successors, for the following uses and purposes—that is to say: the interest and income thereof, to be for the sole exclusive and separate use and benefit of my daughter Isabella Jenkins, wife of Michael Jenkins, above named, during her life, and to be at all times free from and clear of the power and control of her present or any future husband she may at any time have, and free from, and without any liability for the debts, contracts or

engagements of her present or of any future husband she may at any time have, said interest and income on said last mentioned one-sixth part or share of the said rest, residue and remainder of my estate and property as aforesaid, to be paid by the said trustees or the survivors or survivor of them or their successors, to my said daughter Isabella Jenkins, for her sole and separate use as aforesaid during her life, from time to time as the same may accrue, and for which payments her receipts alone are to be an acquittance to the said trustees or the survivors or survivor of them or their successors. And from and immediately after the death of my said daughter Isabella Jenkins, then in trust that the said last mentioned sixth part or share of the said rest, residue and remainder of my estate and property aforesaid, shall continue to be held by my said trustees and the survivors or survivor of them and their successors. In trust for the child or children my said daughter Isabella Jenkins now has, and the child or children she may have hereafter, his, her or their heirs, executors, administrators and assigns, absolutely if more than one, as tenants in common equally, the issue of any deceased child of my said daughter Isabella Jenkins, if any such issue there should be living at her death, to take and have the part, share or proportion to which the parent of such issue would, if living at the time, be entitled. And in the event of the decease of any of the children of my said daughter Isabella Jenkins, under twenty-one years of age and without issue living at the time of his, her or their respective deaths, the part or share of him, her or them so dying, shall go to the survivors or survivor of them, and the heirs, executors, administrators and assigns of such survivors or survivor, and to the issue then living of any deceased child or children of the said Isabella Jenkins, and to the heirs, executors, administrators and assigns of such issue, said issue to take the shares or share to which such deceased child or children would, if living, be entitled. But in case my said daughter Isabella Jenkins shall depart this life without leaving a child or children or descendant or descendants of a child of hers living at the time of her death, or in case she should leave a child or children and descendant thereof living at her decease, and such child or children and descendant or descendants shall

all subsequently depart this life under twenty-one years of age and without issue living, at the time of his, her or their respective deaths, then in trust that the said last mentioned one-sixth part or share of the rest, residue and remainder of my estate and property aforesaid, shall be disposed of in the manner following: One equal fifth part thereof shall go to and I do hereby give, devise and bequeath the same to my son Edward Austin Jenkins, above named, his heirs, executors, administrators and assigns, forever and absolutely. One other equal fifth part thereof shall go to, and I do hereby give, devise and bequeath the same to my son Thomas Meredith Jenkins above named, his heirs, executors, administrators and assigns, absolutely and forever."

The contentions of the respective parties are definitely stated in the petition of the trustees and others above referred to and in the answer thereto of the appellee. The fourth paragraph of the petition is as follows: "That your petitioners, Edward Austin Jenkins, Francis de Sales Jenkins, Harriet A. Kernan and Mary P. Garland, claim that because of the death, intestate, of their said brother, Thomas Meredith Jenkins, during the lifetime of the said Mary Isabella Jenkins and of the death, during her lifetime, of his widow, that neither his said widow, nor her estate are entitled to any of the corpus of the funds of which the said Mary Isabel Jenkins enjoyed the income for life, and to which the said Thomas Meredith Jenkins would have been entitled had he lived until the happening of the contingency which has just occurred, to wit, the death of the said Mary Isabel Jenkins without issue, and they claim that they, the said petitioners, as the only heirs of the said Thomas Meredith Jenkins *in esse* at the death of the said Mary Isabel Jenkins, are entitled to receive the same in equal shares absolutely and free of all trusts; and while your petitioners, the said trustees as aforesaid, and your petitioners, Michael Jenkins as executor as aforesaid, believe and are advised that the said Edward Austin Jenkins, Francis de Sales Jenkins, Harriet A. Kernan and Mary P. Garland are so entitled, nevertheless the said

Leigh Bonsal, as executor as aforesaid of the said Sarah Bonsal Jenkins, deceased, has informed said trustees that he claims as a part of her estate one-half of the said share on the theory that said interest passed by reason of the death intestate and without issue of the said Thomas Meredith Jenkins, in the lifetime of the said Mary Isabel Jenkins, to said Sarah Bonsal Jenkins, under the intestate laws of Maryand, and hence the same is now part of her estate and is payable to him as her executor."

The position taken by the appellee is thus stated in his answer: "This respondent denies the correctness of the claim of the petitioners as to the construction which should be placed on the will of Austin Jenkins relating to the interest of Thomas Meredith Jenkins in the share of his sister, Mary Isabel Jenkins. This respondent asserts that the true construction of said will is that the share of Thomas Meredith Jenkins in his sister's trust estate became vested in him, his heirs, executors, administrators and assigns, at the time of his father's death, and that therefore his rights could only be defeated by his sister having a child or children, or descendant thereof, who would survive her. That this estate was given specifically to Thomas Meredith Jenkins, and that in his lifetime he could have assigned or sold the same, and, had he determined to do so, he could have vested the same in his executor by will. But not having made a will, and having died intestate, all the rights which would have been vested in the executor became vested in his administratrix, duly appointed. That the rights of Thomas Meredith Jenkins and of his estate were in no wise defeated by his death before that of his sister Mary Isabel Jenkins, and that the death of his widow, Sarah Bonsal Jenkins, in 1905 in no wise disturbed her rights or the right of her estate, which became certain and vested in 1890, at the time of the death of Thomas Meredith Jenkins, when all property rights derived under the will of his father became vested in his administratrix. In 1890, Sarah Bonsal Jenkins took a dower interest in the real estate of Thomas Meredith Jenkins, but

she now being dead of course no dower interest or other interest in the real estate of Mary Isabel Jenkins is claimed by her executor or heirs."

We can not agree with the construction of the item of the will which we have quoted contended for by the appellee.

The estate limited to Thomas Meredith Jenkins in the will of his father was a contingent remainder; but it was of that class of contingent remainders which is transmissible, devisable and assignable, for the reason that it was limited to a certain, designated person. It is unnecessary to review the authorities which establish this proposition. They are cited and fully discussed in the recent case of *Fisher* v. *Wagner,* 109 Md. 243, in which the Court was dealing with the provisions of a will almost identical in terms with those contained in the will before us. The real question in this case is, not whether the contingent remainder descended, but to whom it is now distributable. It by no means follows that because it was descendible it necessarily vested as to any part thereof in the widow of Thomas Meredith Jenkins. Both he and his wife died before the life tenant, and it must be admitted that had the remainder been real estate only those heirs of Thomas Meredith Jenkins who were *in esse* at the time of the death of Mrs. Jenkins would have taken the property. The date of *her* death, and not the date of the death of the *contingent remainderman,* is the point of time at which his heirs are to be ascertained, and only such as were *then living* would be entitled to take. That this is the rule to be applied where the contingent remainder in real estate is definitely settled in this Court by *Buck* v. *Lantz,* 49 Md. 439; *Garrison* v. *Hill,* 79 Md. 75, and other cases.

But it is argued that a different rule prevails where the contingent remainder of this class embraces personal property, as it does in this case. In no case where the question has been presented and decided has this Court made any distinction between real and personal property in the application of the rule.

In *Lee* v. *O'Donnell,* 95 Md. 538, the testator devised, as in this case, a certain share of his property to trustees to hold the same for the use and benefit of Oliver O'Donnell, a grandson, for life with a contingent limitation over with a double aspect, viz: to his child or children; but if he should die without issue, then to certain designated contingent remaindermen, viz: Columbus O'Donnell, Lewis Courtney O'Donnell and Eleanora O'Donnell. The language of the will of Columbus O'Donnell, which was before the Court for construction, was substantially and nearly verbally identical with the item of the will of Austin Jenkins by which the trust in favor of his daughter, Mrs. Jenkins, was created. The contingent remainder of Lewis Courtney O'Donnell embraced personal property.

Lewis Courtney O'Donnell died in 1885, above the age of 21 years, leaving surviving him a widow, Nina O'Donnell, and an only child, Louisa Courtney O'Donnell. Oliver O'Donnell, the equitable life tenant, died in 1901, unmarried and without issue. The other remaindermen, Columbus O'Donnell and Eleanora O'Donnell, were living at the time of the death of the life tenant. We have thus a situation very similar to the one presented in this case, except that the widow of Lewis Courtney O'Donnell was living; here the widow of Thomas Meredith Jenkins was dead.

Nina O'Donnell claimed "that she was entitled to share as widow and administratrix in the distribution of the real and *personal* estate devised in remainder to her husband and upon the death of the equitable life tenant, Oliver O'Donnell, or to share in the income, if the trusts created by the will are held to be continuing ones." The Court held that the trusts terminated upon the death of the life tenant. It further decided that Lewis Courtney O'Donnell took a contingent remainder, as Thomas Meredith Jenkins confessedly did under his father's will. It then held that "the husband of the appellant, Nina O'Donnell, having died in the lifetime of the life tenant before the time fixed for the contingent remainder to vest in him, is not therefore entitled to share in

the distribution of his property, under the sixteenth article of the will, either in her right as widow or as his administratrix." The Court affirmed the decree of the Circuit Court No. 2 of Baltimore City, which had decreed that the *corpus* or principal of the estate upon the death of the life tenant vested absolutely in equal one-third shares in the surviving remaindermen and Louisa Courtney O'Donnell, the only child of the other remainderman, Lewis Courtney O'Donnell.

We are, therefore, of opinion upon the authorities to which we have referred that the share to which Thomas Meredith Jenkins would have been entitled had he survived his sister, Mary Isabel Jenkins, is now vested in one-fourth equal parts in his surviving brothers and sisters, viz: Edward Austin Jenkins, Francis deSales Jenkins, Harriet A. Kernan and Mary P. Garland.

In his argument the counsel for the appellee placed great reliance upon the cases of *Snively* v. *Bevans,* 1 Md. 208, and *Hambleton* v. *Darrington,* 36 Md. 434. *Snively* v. *Bevans* reflects little, if any light, upon the question before us. In that case the will of R. W. Watkins gave to his wife certain land for her life, and at her death to go to her two sons. In the event of her sons' death without issue before their mother, she was to have the power of disposing of all she took under the will, and the will further provided : "I will and devise, in the event of the death of my sons, Thomas and Edgar, before they are twenty-one years of age, that my brother, Greenbury M. Watkins, shall have their whole estate, by paying to my wife Ellen one thousand dollars." The Court held that the limitation over to Greenbury M. Watkins was of the class of contingent interests which would pass by descent, and said: "If the sons die under twenty-one, he is to get their estate *charged* with this legacy, and her right becomes perfect to the $1,000.00 as soon as he succeeds to the property." The Court also was of opinion that by the true construction of the will of R. W. Watkins this bequest to his wife was a vested legacy, saying that "the bequest vested in her lifetime and then became transmissible." Whether the

Court meant that this legacy was vested in the wife in the ordinary and proper acceptation of that term, or whether it was vested *sub modo* only as in case of contingent remainders to a named person, it is not necessary for us to inquire; but it is quite evident that that case can have no controlling effect upon the question we are dealing with, because Thomas Meredith Jenkins had no vested remainder in the estate held by the trustees for the life of Mrs. Jenkins, and nothing was charged by the will of Austin Jenkins upon that estate in his favor. Besides the clauses in the two wills are totally dissimilar.

In *Hambleton v. Darrington, supra,* the question was, as stated by the Court, "whether the estate or interest devised or bequeathed by Rachel Watson to Zachariah Woollen passed by the will of the latter to the trustees therein named, to be distributed under its provisions or devolved upon his heirs at law and next of kin; or, in other words, whether Zachariah Woollen died testate or intestate as to the property bequeathed by Mrs. Watson."

The contest in that case was one between the devisees under the will of Zachariah Woollen on the one side and his heirs at law and next of kin and the administrator of his deceased wife on the other. Neither in the argument of counsel, nor in the opinion of the Court, is there any discussion of the rights of the deceased wife. The Court decided that the will of Zachariah Woollen did not pass the estate, or property mentioned in the will of Rachel Watson, and that as to that property he had died intestate, and directed that "in distributing so much of said estate as is personal the auditor should assign to the administrator of Rebecca Woollen, deceased, one-third, and the residue to the next of kin of Zachariah Woollen as in cases of intestacy.

It appears reasonably certain that this direction as to distribution was made by consent of the children of Zachariah Woollen, who were claiming adversely to the will. There was no contest or dispute as to the rights of the deceased widow, and the report shows that the appellants were willing

and consented that her administrator should share in the distribution. See page 437 of the reported case. In this way only can that distribution be reconciled with the principle declared in subsequent well-considered cases on the subject. For the reasons stated the decree of the lower Court will be reversed and the cause remanded with directions to distribute the fund in accordance with the opinion, the costs to be paid out of said funds.

> *Decree reversed and cause remanded, the costs to be paid out of the funds.*